DowNey, Judge,
delivered the opinion of the court:
Plaintiff’s action is predicated on two separate contracts, one for grading and filling and one for the construction of officers’ quarters at the naval training station, Great Lakes, Chicago, and he seeks to recover on the theory that the United States breached both contracts by failure to make payments as required thereby. Plaintiff contends that he rescinded both contracts because of the Government’s breach, and that he is entitled to recover his expenditures as to each, together with a reasonable profit.
There is no doubt as to the obligation of the Government under the contracts to make monthly payments on estimates. But some time was necessarily required to make an estimate, prepare voucher, secure its necessary certification, and approval, etc., and therefore the contract must be interpreted to mean that payments for work done each month would be *171 made within a reasonable time thereafter, in the light of all the circumstances, and should not be unnecessarily delayed. Did the Government so make its payments?
Under the grading contract the plaintiff had done some work in the month of March, 1907, but had then suspended work pending an application for an extension of time, which was granted, and pending efforts to procure some one else to take over this contract because of his own declared inability to carry it on. The extension of time, afterwards granted, was represented to be necessary to enable him to sublet the contract. He did no grading in- April or May, but having failed to sublet the contract, he did some work in May in preparation for further work under the contract and resumed grading and filling in June. His voucher for work done in March was held up because of the uncertainty of his proceeding with the work, but, having resumed, this voucher, No. 8, for $778.97, was delivered to him July 3.
On July 3, 1907, he notified the commandant of the training station in substance that if vouchers due him were not in hand on July 8 he would abandon the work and rescind the contracts. Then, having received voucher No. 8, there was nothing due him on the grading contract. His theory is that he elected to rescind the contracts on July 8. It is apparent that he could not rescind on account of any delay on voucher No. 8, for he had received it on the 3d. We think it was then too early for him to complain of any delay as to the voucher for work done in June. This voucher, No. 9, had been issued on July 5, about the usual time after the end of a month, and forwarded to Washington, and would probably have been in plaintiff’s hands within a reasonable time had he not abandoned the work. It had been stopped by telegraph when he did so, but that was only the eighth day. The average time for the delivery of vouchers, except No. 8, during the progress of this contract had been, as shown, 9f days. A somewhat longer period than that could hardly have been held unreasonable. If there was then no breach, there could be no ground for an attempted rescission, and the contractor was in default when he abandoned the work.
*172 The unfinished work under this contract was advertised and let and completed by another contractor at a cost of $6,006.72 in excess of what it would have cost the United States under plaintiff’s contract; and assuming, as we do, that there was no breach of the contract by the United States justifying its rescission by the plaintiff, this excess cost is a proper charge against the plaintiff. It was ascertained by the prescribed method that the plaintiff had done work of the value of $16,150.66, on account of which he had been paid $12,777.45, leaving due him on account of work done $3,373.21. Plaintiff’s equipment had been taken over by the Government. It was authorized by the contract in such circumstances to do so “ pending the completion of the work covered by the contract.” . Although somewhat indefinite in form, the contract must be construed as authorizing the use of the equipment in the completion of the contract. Theoretically the use of the equipment would lessen the cost of the completion of the contract and inure to that extent to his advantage. After the completion of the work the equipment was appraised by representatives of the United States at $3,530.50, and the plaintiff was requested to remove the same within a stated time, and notified that, failing so to do', it would be sold and the proceeds credited to his account. He did not remove it, and there is no showing as, to what was done further with reference thereto. Under the circumstances we think it must be assumed that the United States did what it notified the plaintiff it would do, and sold this equipment. In the absence of any showing as to the amount realized therefor it ought to be charged against the United States at at least the valuation put on it by its own representatives. The setting off of the first item against the sum of the two others leaves $895.99 in favor of the plaintiff under the grading contract.
The conditions under the officers’ quarters contract were somewhat different. On July 8, 1907, the plaintiff had not yet received voucher No. 6 for $1,386.90 on account of materials furnished and labor performed in the last half of the month of 'May. This voucher had been issued on the 7th of June, but delayed for reason now assigned as “ good excuses,” partly the absence of the commandant, and the *173 absence is regarded as a sufficient excuse for delayed payment because it was on “official business.” We can not adopt the theory that the sending of a Government officer to another duty at a remote station justifies a violation of contract obligation, to the damage of the other party, particularly when there was power to designate some one else to act in his stead, if the power did not lie without specific designation. There was considerable unexplained delay after the voucher was approved by the commandant, and we are of the opinion that there was such unreasonable delay in making this payment as amounted to a breach of the contract and justified the contractor in abandoning the work and rescinding the contract.
Question is made as to whether he did, in fact, elect to rescind the contract because of this breach by the Government, and it' is argued, probably with force, that if he was otherwise financially embarrassed and unable to proceed with the work and did not, in fact, at the time abandon or rescind the contract because of the Government’s breach, he can not now avail himself of this breach. There is some room for the contention since, as found, he predicated his action, in conversation had that day, on “lack of funds,” without specific reference to the Government’s delinquency, and afterwards, in letters of the twelfth and sixteenth, assigned that delinquency as the reason for his action, giving rise to the suspicion of an afterthought, but he had some days before the eighth indicated the course he would pursue if vouchers were not in hand by that day, and the fact that he is not shown, in conversation afterwards detailed, to have used language entirely appropriate to the assertion of his right, should hardly be held sufficient to deprive him of it.
And it is contended that it was a pretext, a subterfuge, to shift responsibility for his shortcoming, and that the amount involved was not sufficient to give merit to his claim of a right to rescind because of the default. In a sense, the amount was not large, but whether large or small is a comparative matter, and an amount of money insignificant under some circumstances may be of abnormal value under others. We must know that this transaction was during a time of financial stringency, a “ panic,” so called, when it was diffi *174 cult for one even to get Ms own money out of a bank, and loans, as ordinarily made, were suspended. We can not say, under such circumstances, that this amount was insignificant, and that it might not have enabled the plaintiff to pursue his work. And we are not called upon to find that it would have enabled him so to do. If the breach was as to a material matter, and we can not say that it was not, it was the plaintiff’s option to exercise his resultant right if he saw fit to do so.
It was ascertained by the prescribed method that the value of the materials furnished and labor done by him, including a reasonable profit, was $11,548.71, and that he had been paid $9,026.55, a difference of $2,522.16, which we think is the correct measure of the plaintiff’s recovery as to this contract.
In the aggregate the plaintiff should have judgment for $3,418.15.
Graham, Judge; Hat, Judge; Booth, Judge, and Campbell, Chief Justice, concur.